WENDELL v. WILLETTS.

(Circuit Court, S. D. New York. January 4, 1911.)

1. TRIAL (§ 78*)—RECEPTION OF EVIDENCE—MOTION TO STRIKE.
   Where evidence is apparently competent when offered, a motion must be made to strike it out, or a request made for instructions to the jury to disregard it, if in the course of the trial it becomes evident that it is in fact immaterial, or is, or may be, inadmissible and prejudicial.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 191; Dec. Dig. § 78.*]

2. MASTER AND SERVANT (§ 70*)—EXPERTS—NATURE OF SERVICES.
   Defendant had a valuable library, including old and rare books, first editions, prints, etc. These having been destroyed by fire, defendant employed plaintiff, an expert in the book business, to assist in the preparation of an inventory of the books and prints to be submitted as a part of the defendant's proof of loss. Plaintiff was so engaged from December 2, 1909, to February 4, 1910. Plaintiff had assisted in the selection of many, if not nearly all, of the books, and had sold or assisted in the sale of some of them to defendant, and prior to the fire had been employed to catalog the same, during which work he had made copious and correct memoranda regarding the books and prints which he had

preserved, and calling to mind the books and prints in the library or collection of defendant prior to the fire and by going to the printed lists, catalogs, etc., of book houses and works descriptive of such books and prints which were in existence and accessible at slight cost, plaintiff was able to give an accurate description of the ones destroyed, and this was what he in fact did and in what his services largely consisted. Defendant furnished and paid for all stenographic work and typewriting and for the making of lists, and for all that kind of work except pen and pencil memoranda. *Held*, that so far as plaintiff's services consisted of the disclosure of his knowledge of the books and prints gained by him while in defendant's employ or in selling them to the defendant, or in dictating their descriptions to a stenographer, or reading the same from a book when found, it was mere exercise of memory, or a consultation of other descriptive books or catalogs, and a search for memoranda or an application thereof which was expert services for which plaintiff was entitled to recover expert compensation.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 70.*]

Action by Edwin H. Wendell against Howard Willetts to recover for services rendered in assisting defendant in the preparation of proofs of loss to recover insurance on defendant's library. A verdict having been returned for plaintiff for $3,500, defendant moves to set the verdict aside and for a new trial on the stenographer's minutes, exhibits, etc., on the ground that the verdict is contrary to and unsupported by the evidence, and that the damages awarded are excessive. Motion granted, unless plaintiff stipulates within 20 days to consent to a reduction of the verdict to $2,500.

Clifford Seasongood, for plaintiff.
Frank L. Hall (Ernest P. Hoes, of counsel), for defendant.

RAY, District Judge. The defendant had a valuable house with furniture therein at White Plains, N. Y. He also had therein a valuable and quite extensive library, including rare and old books, first editions, and prints, etc., of great value on account of age, rarity, etc. On November 30, 1909, all this property was totally destroyed by fire. All or nearly all was quite well insured. With the library, prints, etc., all catalogs, or lists and all memoranda belonging to Mr. Willetts and relating to the same were destroyed. In order to collect the insurance, it became necessary for Mr. Willetts to prepare and present proofs of loss, including an inventory of such books, prints, etc., with their true values. To illustrate the value of some of these books and prints and the importance of the work to Mr. Willetts, it may be mentioned that, as shown by a "Statement of Loss" in evidence, a set "Cruikshankiana" was valued at $35,875, total loss; "Original edition of Thackeray" was valued at $25,250; "Grolier Society Publications" at $2,025; "Original edition of Lever" at $1,575; "Original edition of Stevenson" at $1,200—total $65,925. Also "Books (per inventory, 20 foolscap pages), various bills, $30,000." Prior and up to 1901 the plaintiff had been in the employ of Dodd, Mead & Co. in the book and print business, and he had assisted in the selection of many if not nearly all these books, etc., and had sold or assisted in the sale of same to Mr. Willetts. He had also been employed prior to the fire to catalog these

books, prints, etc., and had done so, and after the fire and after being employed to make an inventory and appraisal, for the purpose of preparing proofs of loss, he wrote Mr. Willetts, amongst other things:

"The work I did on your library at various times caused these books to be photographed in my mind and the memoranda I made when I appraised the library some six years ago has resulted in my being able to give minute particulars about them. I can come pretty close to giving a complete account of every book and print in the library. * * * I can give an absolutely complete list of every item in the sets of Thackeray, Lever and Grolier Club publications. The preparation of the Cruikshank inventory, however, is an enormous task to be accomplished in so short a time," etc.

Willetts employed Wendell soon after the fire to make an inventory and appraisal of the books and prints, the one referred to in the above-mentioned letter. The compensation was not agreed upon, and, after the work was done, a difference arose as to the value of the work done, and this suit was brought to recover what such services were reasonably worth. In his verified complaint the plaintiff placed the value of such services at $4,500, but on the trial he testified they were reasonably worth the sum of $7,500. The nature, extent, and quality of the work was in question, of course, as bearing on the question of value. The rendition of service commenced on the 2d day of December, 1909, and ended February 4, 1910. There were intervening days on which no work was done, and there was a dispute as to the actual number of days on which the plaintiff worked. Experts were called on each side who gave testimony as to the value of the services, which was the only question.

The employment and rendition of services were conceded. The evidence of plaintiff's witnesses tended to sustain his contention. That of defendant's witnesses was to the effect the value of such services was not to exceed the sum of $1,200. The jury found a verdict of $3,500. It is contended this was so contrary to and unsupported by the great weight of evidence that the verdict should be set aside or reduced. No exception was taken by either party to the charge of this court, and on this motion the defendant does not complain that there was any error in the admission or rejection of evidence. I have examined the voluminous record on my own motion to see if there was any prejudicial error in this regard. I find none that would justify setting aside the verdict and granting a new trial. Slight errors will creep into any trial of length such as this was, as will more or less immaterial evidence, the bearing of which cannot be accurately determined until the case is ready for submission. If such evidence is apparently competent at the time, a motion should be made to strike out or a request made for instructions to the jury to disregard same if in the course of the trial it becomes evident that the evidence is in fact immaterial, and is or may be in fact prejudicial. I find nothing of this kind in this case. The recovery in this case gives the plaintiff about $70 per day for his services if he worked only work days, including Saturdays, and only about $55 per day if he worked every day including Sundays. This makes no allowance for overtime evenings. There was respectable evidence, not contradicted, that the ruling compensation in New York for such services requiring the skill and knowledge

of an experienced expert was $20 per day. The evidence demonstrated, and was uncontradicted, that the defendant furnished and paid for all stenographic work and typewriting in making lists, etc., all that kind of work except pencil or pen memoranda; also, that the plaintiff had made, when making the prior inventories of this library and of those prints and when selling them to Mr. Willetts or obtaining them for him, copious and correct memoranda regarding same which he had preserved. Calling to mind the books or prints in the library or collection of defendant prior to the fire by going to the printed lists, catalogs, etc., of book houses and works descriptive of such books and prints, which were in existence and accessible without cost of moment, the plaintiff was able to give an accurate description of the ones destroyed, and that is what he in fact did. It was not disputed that most of the work was done in that way; that is, the plaintiff would recall the book or print, then hunt out its description, and dictate same to a stenographer. There were cases where the plaintiff had a special memory as to books and prints in this collection not found in any book or catalog, etc. The defendant contends that, while this took time, it did not require special skill or experience on the part of the plaintiff, or expert skill or knowledge, but only the use and giving up of knowledge by the plaintiff of these books and prints gained by him when in the employ of the defendant on former occasions, or when selling them to the defendant, and that to tell its description to a stenographer or read it from a book when found was not expert work, but merely clerical and dictation work from memory.

The defendant contends that the plaintiff might have been called into court and compelled to disclose all this information gained before and possessed by him on payment of legal witness fees; that, while a legal contract for using his memory and disclosing his knowledge of these books and prints and for payment therefor might have been made, none was made, and that, inasmuch as the suit is based on a quantum meruit, the plaintiff can only recover compensation based on time spent on ability to hunt up the description of these destroyed books and prints in other existing and accessible descriptive books or catalogs and transcribe such information or cause it to be transcribed and arranged in the way mentioned, and that nothing could be claimed legally or given by the jury for using or giving up this information, inasmuch as he agreed to make as complete and accurate an inventory and statement of values as he could, and bargained for no extra compensation on account of using his special knowledge or information gained in the manner described. The court so instructed the jury.

The making of this inventory and appraisal of these destroyed books and prints, so far as they were pictured on the plaintiff's memory or mentioned and described in his written memoranda, demanded no skill or expertness other than a mere exercise of memory, a consultation of other descriptive books and catalogs, and a hunting up of such memoranda and research and amplification thereof. However, Mr. Wendell was an expert man in this business of books and prints. He knew where to look for descriptions, values, etc. The knowledge he had gained and possessed of this particular collection was a part of his

expert knowledge. Not the fact that Mr. Willetts owned them or had them in his collection, as that was a mere matter of memory and a part of his general information on general subjects. He was an expert, and he possessed special knowledge regarding these books and prints, and Mr. Wendell employed him to do the work. I think he was doing the work of an expert and entitled to the pay of one, all things considered, but am far from the opinion that the main part of the work actually done was that of an expert in the business. If A., not an expert in the book and print business, should see a shelf of books and prints, and should have them accurately described to him with cost and value of each, and should happen to remember the description and cost of each, and they should be destroyed, and A. should be employed to give in writing a list and description thereof with cost or value and should do so, I am of the opinion he would not be doing the work of an expert. The necessity for complete, accurate, and speedy work was apparent. It was necessary to show that these prints and books, or some of them, were originals and first editions, etc. Their value and hence the amount of insurance recoverable, to an extent depended on this. But Mr. Wendell knew that the prints sold Mr. Willetts were originals, and that the books were first editions, and Wendell was not entitled to compensation for corroborating Mr. Willetts in that statement in his proofs of loss. He could have been compelled to say all that and to have given from memory a list and description of books and prints so far as he could remember them. That knowledge was not his special property which he could refuse to disclose in a proper place when called upon in a proper and legal manner. It was in no way privileged. While the interests involved, the importance of the matter, were proper subjects of consideration in estimating and determining the value of the service rendered, they do not and did not justify a forced contribution from Mr. Willetts. It was not shown that Mr. Willetts could not have given an accurate list of all these books and prints. It did appear, inferentially at least, that he was not expert enough to absolutely determine the prints were originals and the books first editions. However, he knew they were claimed to be such, and that they had been represented to be such, and had been sold to him and paid for by him as such and that he had obtained them from Dodd, Mead & Co. through Wendell, their salesman, or from Wendell. If the insurance companies had contested his claim in this regard, he could have called Wendell as a witness and shown the fact. However, there were elements of considerable value in the services of Wendell and much that required expert knowledge and ability. It appeared, of course, this was inevitable, that Mr. Willetts was a man of considerable property, but this did not enhance the value of the services rendered.

I was not satisfied at the time with the verdict rendered, being of the opinion it was excessive in amount considering the character and the quality of the service rendered, the time required, the interests involved, the necessity for accuracy and completeness, and the work done, measured as to value by the proof in the case as to compensation demanded by and paid to others of equal skill for like services under similar conditions in that vicinity. I am of that opinion now after a

careful review of all the evidence, and think the jury must have unconsciously disregarded the charge of the court and been carried away, so to speak, by the seeming affluence of the defendant, the fact that Mr. Wendell had this special knowledge at his command, which he only, aside from Mr. Willetts, possessed, and that his use of it at Willetts' request in obtaining a large insurance was of great value to Mr. Willetts in the emergency, and that Wendell should be compensated for disclosing the information. In short, the jury seems to have compensated the plaintiff on the basis of the value of the work to Mr. Willetts at that time and under those circumstances and in his emergency, rather than on the basis of the value of such services measured by what others of equal skill and attainment demanded and received in that vicinity for like or similar services under like conditions. The "discretion" of a jury, as it is sometimes called, in awarding damages for injuries, pain, and suffering, when there is no estimate of money value by witnesses, or in giving compensation for services, or in fixing the value of property, where there is a wide range in estimates of value given by witnesses, is not lightly to be interfered with, and, if interfered with, the power should be cautiously exercised. However, neither excessive verdicts nor inadequate verdicts should be sanctioned. Men are not to be paid excessive sums because poor for either work or property, and are not to pay excessive sums for either work or property because in affluent circumstances.

I do not think the plaintiff's services were extraordinary, or that he was entitled to compensation at the rate of over $20,000 per year. If compensated at the rate of $14,000 per year, I think it all-sufficient and exceedingly liberal. As there is some evidence to sustain a recovery of that amount, the verdict will be reduced to the sum of $2,500. If the plaintiff files a stipulation within 20 days consenting that the verdict be reduced to that sum, $2,500, the motion to set aside the verdict and grant a new trial is denied, otherwise the motion is granted.